UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CLAMEKUS JOHNSON                                               PLAINTIFF

V.                                      CIVIL ACTION NO. 3:24-CV-380-KHJ-MTP

CITY OF PEARL, MISSISSIPPI, et al.                          DEFENDANTS

ORDER

Before the Court are Defendants' [14, 18] Motions for Judgment on the Pleadings. The Court grants both motions. But the Court allows Plaintiff Clamekus Johnson an opportunity to move for leave to amend by July 15, 2025.

I.   Background

This case arises from alleged police brutality. And this background comes from the factual allegations in Johnson's [1] Complaint, which the Court must accept as true at the pleadings stage.[1]

---

[1] The Individual Defendants attached ten exhibits to their [18] Motion, and Johnson attached two more exhibits to his [28] Memorandum. But at the pleadings stage, the Court may only consider (1) the complaint, (2) documents attached to the complaint, (3) matters subject to judicial notice, and (4) documents that "are referred to in the complaint and are central to the plaintiff's claims . . . ." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *see also* Individual Defs.' Reply [30] at 2 (noting requirement that documents be "central to" the claim but omitting requirement that documents be referenced in the complaint). None of the 12 exhibits are attached to Johnson's [1] Complaint, subject to judicial notice, or referenced in Johnson's [1] Complaint. So the Court disregards the 12 exhibits at this stage. *See, e.g.*, *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).

Johnson, a black man, lived in an apartment in Pearl. Compl. [1] ¶¶ 4–6. One day in January 2023, he was walking home. *Id.* As he approached his apartment, he saw a group of Pearl police officers outside the apartment complex. *See id.*

The [1] Complaint does not say why the officers were there. But it does say that it was "for reasons that did not involve [Johnson]." *Id.* ¶ 4. And so, "innocently and without context," Johnson kept walking home until he was "near the area where the officers were." *Id.* ¶ 5.

The officers saw Johnson and screamed at him. *See id.* ¶ 6. They approached him. *Id.* And they demanded that he take a different route home. *Id.* In response, Johnson "asked the officers what was up and why they were bothering him, as he was simply attempting to go back to his apartment/home." *Id.* ¶ 7.

"After his response, the group of officers approached [Johnson]." *Id.* ¶ 8. "[A]t least five (5) City of Pearl Police Officers surrounded him," and one officer "threatened to 'slug fuck' him." *Id.* "The Pearl Police Officers continued to shout slurs, including racial slurs[,] at [Johnson] and walk closer to him, enclosing him in tighter [and] causing [him] to fear that he was going to be attacked and to put his hands up to protect his face." *Id.* ¶ 9.

When Johnson "tried to protect his face, the officers, unprovoked, punched and grabbed [him], slammed him to the ground, subdued him, and severely beat him." *Id.* ¶ 10. "[Johnson] had not violated any law or ordinance before the officers physically attacked [him]," and the officers did not "inform [him] that he was being detained or under arrest before physically attacking him." *Id.* ¶ 11.

2

The incident caused Johnson to suffer "painful, severe, and permanent injuries to his head, face, mouth, teeth, ribs, abdomen, and back." *Id.* ¶ 12. It also caused him to suffer "severe emotional distress, including . . . anguish, fright, horror, nervousness, post-traumatic stress disorder, anxiety, shock, humiliation, and shame." *Id.* ¶ 34.

In June 2024, Johnson sued over the incident. [1]. Namely, he sued Defendants (1) the City of Pearl; (2) Dean Scott, the former City of Pearl Chief of Police; (3) James R. Stovall, a City of Pearl police officer; (4) Sergeant Greene, another City of Pearl police officer; and (5) John Does 1–5. *Id.* ¶¶ 1(b)–(f).[2]

Johnson's [1] Complaint raises six counts: (1) Fourth Amendment violations, (2) Fourteenth Amendment violations, (3) assault, (4) battery, (5) intentional infliction of emotional distress (IIED), and (6) "negligent, grossly negligent, and wanton failure to monitor, train, and supervise." *Id.* ¶¶ 17–39.

But the [1] Complaint does not say very much about what each Defendant allegedly did. As for officers Stovall and Greene, the [1] Complaint does not allege any specific facts about what they did. *See id.* ¶¶ 1(d)–(e).[3] As for former Chief Scott, the [1] Complaint only alleges that

- Scott failed to supervise and "properly train" his officers, *id.* ¶ 13;
- Scott "was aware or should have been aware of the culture of violence and racism in the City of Pearl Police Department," *id.* ¶ 15; and

---

[2] Johnson sued Scott, Stovall, and Greene in their official and individual capacities. [1] ¶¶ 1(c)–(e). Scott recently passed away on June 20, 2025. *See* Suggestion of Death [31].

[3] The [1] Complaint asserts the legal conclusion that Stovall and Greene are "legally responsible." [1] ¶¶ 1(d)–(e). But it alleges no specific facts about their conduct.

3

- over the "past several years, there have been numerous complaints made about incidents of abuse, excessive use of force, etc. caused by Officers of the Pearl Police Department," *id.* ¶ 39.

And finally, as for the City of Pearl, the [1] Complaint only alleges that

- the City employed all the other Defendants, *id.* ¶ 14;
- the City had an official municipal policy of "failing to supervise or failing to properly train its employees," *id.* ¶ 13;
- there was a "culture of violence and racism in the City of Pearl Police Department," *id.* ¶ 15; and
- over the "past several years, there have been numerous complaints made about incidents of abuse, excessive use of force, etc. caused by Officers of the Pearl Police Department," *id.* ¶ 39.

Defendants answered Johnson's [1] Complaint. City's Answer [11]; Individual Defs.' Answer [12]. They then moved for judgment on the pleadings. [14]; [18].

The City's [14] Motion seeks to dismiss the federal constitutional claims because the [1] Complaint lacks any specific factual allegations about an official municipal policy. [14] at 1. And it seeks to dismiss the state-law claims based on sovereign immunity (among other grounds). *See id.*

The three Individual Defendants' [18] Motion seeks to dismiss the federal constitutional claims because the [1] Complaint lacks any specific factual allegations about Stovall and Greene's conduct, and about Scott's deliberate indifference. *See* Individual Defs.' Mem. Supp. Mot. [19] at 8–12.[4] And it seeks to dismiss the state-law claims based on statutes of limitations, lack of specific factual

---

[4] The Individual Defendants also seek to dismiss the federal constitutional claims as *Heck*-barred. [19] at 5–7 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

4

allegations about each Individual Defendant's alleged conduct, and immunity under the Mississippi Tort Claims Act (MTCA). *See id.* at 12–17.

Johnson responds that the Court should deny both [14, 18] Motions or allow him leave to amend. Johnson's Mem. Supp. Resp. to City's Mot. [22]; Johnson's Mem. Supp. Resp. to Individual Defs.' Mot. [28].

II.   Standard

To survive a motion for judgment on the pleadings, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022) (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (citation modified). The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Palmquist v. Hain Celestial Grp.*, 103 F.4th 294, 304 (5th Cir. 2024) (citation modified), *cert. granted in part*, No. 24-724, 2025 WL 1211787 (U.S. Apr. 28, 2025).

"When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation modified). "A court must carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery." *Santander v. Salazar*, 133 F.4th 471, 478 (5th

5

Cir. 2025) (citation modified). But "an assertion of qualified immunity does not subject the complaint to a heightened pleading standard." *Id.* (citation modified). At the pleadings stage, "the district court [is] only to assess whether [the] complaint allege[s] sufficient facts to defeat qualified immunity." *Id.*

And at this stage, courts "accept all facts as pleaded and construe them in the light most favorable to [the plaintiff]." *Guerra v. Castillo*, 82 F.4th 278, 282 (5th Cir. 2023) (citation modified). But courts "do not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* (citation modified).

III. Analysis

The Court first addresses the City's [14] Motion, then the Individual Defendants' [18] Motion, and then Johnson's request for leave to amend.

    A. City's [14] Motion

The Court dismisses Johnson's claims against the City.[5]

        1. Federal Constitutional Claims

The Court starts with Johnson's federal constitutional claims against the City. [1] ¶¶ 17–28; [22] at 4–9. The Court dismisses them because Johnson's [1] Complaint fails to plausibly allege an official municipal policy. [15] at 3–9.

"Under *Monell*, local governments are responsible for constitutional wrongs visited upon citizens pursuant to official 'policy.'" *Gonzalez v. Ysleta Indep. Sch.*

---

[5] The Court also dismisses Johnson's official-capacity claims because they duplicate his claims against the City. *See* [1]; *Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020). The City and Individual Defendants made that argument, City's Mem. Supp. Mot. [15] at 1 n.1; [19] at 15, but Johnson did not respond. *See* [22] at 1–12; [28] at 1–17.

6

*Dist.*, 996 F.2d 745, 753 (5th Cir. 1993). To state a *Monell* claim, a plaintiff "must plead facts that plausibly establish that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023) (citation modified). And there are three ways to establish an "official policy":

> (1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (3) even a single decision may constitute municipal policy in rare circumstances, when the official or entity possessing final policymaking authority for an action performed the specific act that forms the basis of the [Section] 1983 claim.

*Id.*

Johnson's [1] Complaint tries to establish a custom.[6] First, it asserts a custom of using excessive force. *See* [1] ¶¶ 15, 20, 26, 39. And second, it asserts a custom of failing to train or supervise officers. *See id.* ¶¶ 13, 20, 26, 36, 39. But the [1] Complaint fails to plausibly allege either theory.[7]

First, the [1] Complaint fails to plausibly allege a custom of using excessive force. [15] at 4–5. To plausibly plead a custom, "a plaintiff must do more than describe the incident that gave rise to his injury." *Johnson v. Harris County*, 83

---

[6] The [1] Complaint does not allege any "official written or otherwise specially articulated policy . . . ." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009); *see also* [1]; [22]. And it does not allege that any final policymaker "performed the specific act" underlying his claim. *St. Maron Props.*, 78 F.4th at 760; *see also* [1]; [22].

[7] The Court thus need not, and does not, reach the other two elements of *Monell* liability.

F.4th 941, 946 (5th Cir. 2023) (citation modified). "A plaintiff's description of the challenged practice cannot be conclusory; it must contain specific facts." *Id.* (citation modified). "And those specific facts must be similar to the case at hand: Prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id.* at 946–47 (citation modified).

Johnson's [1] Complaint fails to meet that standard. To be sure, it asserts that the City's police department had a "culture of violence and racism," [1] ¶¶ 15, 20, 26, and it alleges that "over the course of the past several years, there have been numerous complaints made about incidents of abuse, excessive use of force, etc." *Id.* ¶ 39. But the [1] Complaint contains no "specific facts" establishing a custom of excessive force. *Johnson*, 83 F.4th at 946 (citation modified). "Instead, the complaint's only specific facts appear in the section laying out the events that gave rise to this action." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020). So Johnson's [1] Complaint "clearly does not satisfy *Twombly* or *Iqbal* with respect to the allegation that excessive force is [a City of Pearl] 'custom.'" *Id.*; *see also, e.g.*, *Martinez v. City of Rosenberg*, 123 F.4th 285, 289 (5th Cir. 2024) (affirming dismissal where the complaint "vaguely allege[d] a pattern of 'excessive force and condoning excessive force' without providing factual context or supporting details—such as dates, the officers involved, or the injuries received").

Second, Johnson's [1] Complaint fails to plausibly allege a custom of failing to train or supervise officers. [15] at 5–9. To invoke that theory, a plaintiff must plausibly allege three elements: "(1) the city failed to train or supervise the officers

involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Stapleton v. Lozano*, 125 F.4th 743, 753 (5th Cir. 2025) (quoting *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022) (per curiam)). And to establish deliberate indifference, "a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Henderson*, 51 F.4th at 131 (citation modified). Alternatively, a plaintiff may try to allege the "extremely narrow" single-incident exception, which is "generally reserved for those cases in which the government actor was provided *no training whatsoever.*" *Id.* (citation modified); *see also, e.g., id.* at 132 (noting that "vague allegations are insufficient to establish 'deliberate indifference' through the single-incident exception" (citation modified)); *Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021) ("The plaintiffs do not allege that the county provided no training, so they cannot show that the county was deliberately indifferent.").

Johnson's [1] Complaint fails to plausibly allege deliberate indifference. [15] at 6–9.[8] The [1] Complaint does not allege any "specific facts" establishing a pattern of similar constitutional violations. *Johnson*, 83 F.4th at 946 (citation modified). As discussed, the [1] Complaint's only allegation of a pattern is conclusory. *See* [1] ¶ 39. The [1] Complaint also does not plausibly allege that the single-incident exception

---

[8] The Court thus need not, and does not, address the other two elements of Johnson's failure-to-train or failure-to-supervise theory.

9

applies: It does not allege that officers received "*no training whatsoever*," but rather that they were not "properly train[ed]." *Compare Henderson*, 51 F.4th at 131 (citation modified), *with* [1] ¶ 13. So the [1] Complaint fails to plausibly allege deliberate indifference. *See, e.g.*, *Hutcheson*, 994 F.3d at 483. It thus fails to plausibly allege a custom of failing to train or supervise officers.

In sum, Johnson's [1] Complaint does not plausibly allege an official municipal policy. So the Court dismisses his federal constitutional claims against the City.

  2. State-Law Claims

The Court turns to Johnson's state-law claims against the City. [1] ¶¶ 29–39; [22] at 9. The Court dismisses them based on sovereign immunity. [15] at 9–12.

The MTCA "provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit." *Walton v. City of Verona*, 82 F.4th 314, 321 (5th Cir. 2023) (citation modified). The MTCA waives sovereign immunity for "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." Miss. Code Ann. § 11-46-5(1). But that waiver is subject to statutory qualifications and exceptions, two of which require dismissal of Johnson's state-law claims.

First, the Court dismisses Johnson's assault, battery, and IIED claims based on the MTCA's exclusion of malice-based torts. [15] at 10–11. As discussed, the MTCA qualifies its waiver of sovereign immunity:

10

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

Miss. Code Ann. § 11-46-5(2). Interpreting that provision, the Mississippi Court of Appeals has held that "the MTCA does not apply to claims for intentional infliction of emotional distress, assault, and battery against governmental employees in their official capacit[ies]." *Renfroe v. Parker*, 374 So. 3d 1234, 1242 (Miss. Ct. App.) (en banc), *cert. denied*, 375 So. 3d 671 (Miss. 2023). The Court thus dismisses Johnson's assault, battery, and IIED claims against the City.

And second, the Court dismisses Johnson's "negligent, grossly negligent, and wanton failure to monitor, train, and supervise" claim based on the MTCA's discretionary-function exception. [1] ¶¶ 35–39; [15] at 11–12. Under that exception, the City "shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(d). Interpreting that provision, the Mississippi Supreme Court has held that "the manner in which a police department supervises, disciplines[,] and regulates its police officers is a discretionary function . . . ." *City of Clinton v. Tornes*, 252 So. 3d 34, 39–40 (Miss. 2018) (citation modified). The Court thus dismisses this claim. *See Watkins ex rel. Watkins v. Miss. Dep't of Hum. Servs.*, 132 So. 3d 1037, 1042–43 (Miss. 2014) (noting that, if the

discretionary-function exception applies, the government is entitled to sovereign immunity).

In short, sovereign immunity bars Johnson's state-law claims against the City. So the Court dismisses those claims.

B. Individual Defendants' [18] Motion

The Court now turns to Johnson's claims against the Individual Defendants in their individual capacities. The Court dismisses those claims.

1. Federal Constitutional Claims

The Court starts with Johnson's federal constitutional claims. [1] ¶¶ 17–28; [28] at 4–12. The Court dismisses them.

a. *Heck*

The Court first addresses the Individual Defendants' threshold argument: that Johnson's federal constitutional claims are *Heck*-barred. [19] at 5–7; [30] at 4.

The Court cannot determine whether they are or are not. The parties' briefing states that, as of earlier this year, Johnson faced pending misdemeanor charges over the alleged incident. *See* [19] at 6–7; [28] at 2–3. If those charges remain pending, then "it is simply premature to determine whether or not [Johnson's federal constitutional] claims are barred under *Heck*." *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (per curiam). So the Court will not dismiss Johnson's federal constitutional claims on this basis.[9]

---

[9] The Individual Defendants' reliance on *Hamilton* is misplaced; the plaintiff in that case had already been convicted. [30] at 4; *see also Hamilton v. Lyons*, 74 F.3d 99, 102–03 (5th Cir. 1996).

b. Stovall and Greene

The Court takes up Johnson's Fourth Amendment claims against Stovall and Greene. *See* [1] ¶¶ 17–22; [28] at 7–8. The Court dismisses those claims because the [1] Complaint includes no specific allegations about Stovall's or Greene's conduct. [19] at 9.

To state a Fourth Amendment excessive-force claim, a plaintiff must plausibly allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (citation modified). "The second and third elements collapse into a single objective-reasonableness inquiry guided by the following *Graham* factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (citation omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). If officers "participated in distinct ways," then

---

The Fifth Circuit has "instructed that, following *Heck* . . . , district courts should stay [Section] 1983 cases that may implicate the validity of pending criminal proceedings until those underlying proceedings have run their course." *Gates v. Strain*, 885 F.3d 874, 883 (5th Cir. 2018); *see also Mackey*, 47 F.3d at 746 ("The [district] court may—indeed should—stay proceedings in the [S]ection 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Wallace v. Kato*, 549 U.S. 384, 394 (2007) ("If a plaintiff . . . files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial[], it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case . . . is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." (citation modified)).

But no party has moved for a stay. And the Court lacks the information necessary to decide whether a stay would be proper here.

the plaintiff must plausibly allege facts indicating that each officer's use of force was objectively unreasonable. *Id.*

Yet, as discussed, the [1] Complaint does not allege any specific facts about Stovall's or Greene's conduct. *Supra* p. 3 & note 3. It is unclear from the [1] Complaint whether those two officers took part in the incident, much less what those two officers allegedly did. So the [1] Complaint does not plausibly allege that Stovall or Greene used objectively unreasonable force.[10]

The Court thus dismisses Johnson's Fourth Amendment claims against Stovall and Greene. *See, e.g., Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 214−15 (5th Cir. 2009).

### c. Scott

The Court now turns to Johnson's federal constitutional claims against former Chief Scott. *See* [1] ¶¶ 17–28; [28] at 9–12. The Court dismisses those claims because the [1] Complaint fails to plausibly allege deliberate indifference. [19] at 10–12.

"Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Hicks v. LeBlanc*, 81 F.4th 497, 504 (5th Cir. 2023) (citation modified). But, as relevant here, a supervisor "may . . . be liable for failure to supervise or train if (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the

---

[10] Johnson's response relies on the bodycam videos that the Individual Defendants attached, *see* [28] at 7, but those videos are not properly before the Court. *See supra* note 1 (noting that Johnson's [1] Complaint did not attach the bodycam videos or incorporate them by reference).

14

failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.* at 505 (citation modified); *see also Ford v. Anderson County*, 102 F.4th 292, 320 (5th Cir. 2024) (per curiam) (noting "the close relationship between the elements of municipal liability and an individual supervisor's liability" (citation modified)).

As discussed, Johnson's [1] Complaint fails to plausibly allege deliberate indifference. *Supra* pp. 9–10. So the Court dismisses his federal constitutional claims against Scott.

  2. State-Law Claims

The Court now addresses Johnson's state-law claims against the Individual Defendants. [1] ¶¶ 29–39; [28] at 12–14. The Court dismisses those claims.

The Court dismisses Johnson's assault and battery claims because they are time-barred. [19] at 12–13. At the pleadings stage, "[a] statute of limitations may support dismissal . . . where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Assault and battery claims are subject to a one-year statute of limitations under Mississippi law. Miss. Code Ann. § 15-1-35. Johnson's [1] Complaint shows that his cause of action accrued in January 2023, but he filed this suit in June 2024. *See* [1]. And the [1] Complaint raises no basis for tolling. So Johnson's assault and battery claims are time-barred. The Court dismisses those claims as to all three Individual Defendants.

The Court dismisses Johnson's IIED claims given the [1] Complaint's lack of specific allegations about each Individual Defendant's alleged conduct. [19] at 14–15. To state an IIED claim under Mississippi law, a plaintiff must allege five elements:

> (1) [the defendant] acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) [the defendant's] acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of [the defendant].

*Renfroe*, 374 So. 3d at 1243 (citation modified). The IIED standard is "very high, focusing specifically on the defendant's conduct and not the plaintiff's emotional condition." *Id.* (citation modified). Yet, as discussed, Johnson's [1] Complaint does not include any specific factual allegations about each Individual Defendant's alleged conduct. *Supra* pp. 3–4 & note 3. So the Court dismisses Johnson's IIED claims as to all three Individual Defendants.

And the Court dismisses Johnson's "negligent, grossly negligent, and wanton failure to monitor, train, and supervise" claims because "[t]he MTCA does not allow a negligence claim individually against an employee operating within the course and scope of employment." [1] ¶¶ 35–39; [19] at 15; *Burnett v. Hinds County ex rel. Bd. of Supervisors*, 313 So. 3d 471, 477 (Miss. 2020).

In sum, the Court dismisses all of Johnson's state-law claims against the Individual Defendants.

C. Leave to Amend

Finally, the Court addresses Johnson's request for leave to amend. [22] at 10–11; [28] at 14–17. The Court denies that request. But it will allow Johnson to file a procedurally proper motion for leave to amend by July 15, 2025.

For two reasons, the Court denies Johnson's request for leave to amend. First, the request is procedurally improper under the Court's Local Rules. A plaintiff's response to a defendant's motion "may not include a counter-motion in the same document." L.U. Civ. R. 7(b)(3)(C). "Any motion must be an item docketed separately from a response." *Id.* And when a plaintiff moves for leave to amend under Federal Rule of Civil Procedure 15(a), the Local Rules require the plaintiff to attach a "proposed amended pleading." L.U. Civ. R. 7(b)(2), 15. Johnson's request for leave to amend did not follow this procedure.

And second, Johnson's request is substantively ambiguous as to the City and substantively deficient as to the Individual Defendants. As to the City, Johnson says that he "could have included additional facts," [22] at 10, including that:

- In February 2021, multiple Pearl police officers allegedly repeatedly beat an arrestee, Keith Penton. *Id.* at 11; *Penton v. City of Pearl*, No. 3:24-CV-107, 2024 WL 5190364, *1 (S.D. Miss. Dec. 20, 2024).
- In April 2021, Pearl police officer Ryan Edwards—while walking an arrestee, Rickey Gray Groves, to an ambulance for medical treatment— allegedly said, "'watch me slap this motherf**ker,'" and then allegedly slapped Groves across the face. [22] at 11; *Groves v. City of Pearl*, No. 3:22-CV-567, 2025 WL 662411, *1 (S.D. Miss. Feb. 28, 2025).
- And in December 2023, Pearl police officer Michael Green forced a man in custody to "lick his own urine from the floor of a holding cell." [22] at 10; Sentencing Audio at 15:45–20:09, 22:41–23:09, *United States v. Green*, No. 3:24-CR-21 (S.D. Miss. June 12, 2024), ECF No. 20. Green was convicted of deprivation of rights under color of law. [22] at 10; Judgment, *Green*, No. 3:24-CR-21, ECF No. 18.

But it is unclear whether Johnson has additional factual allegations that could support a claim under *Monell*. *See* [22] at 10–11 (stating that he knows about "numerous acts" and "sufficient facts to substantiate" his [1] Complaint). And as to the Individual Defendants, Johnson only states that he "could have included additional facts regarding the Officers' specific actions and the other officers involved." [28] at 15. But the Court remains unaware what those facts are.

For those reasons, the Court denies Johnson's request for leave to amend.

Still, the Court will allow Johnson an opportunity to file a procedurally proper motion for leave to amend by July 15, 2025. If Johnson wishes to move for leave to amend, he must attach a proposed amended pleading, pleading his best case in compliance with the standards discussed throughout this Order and other applicable precedent.[11] If Johnson does not move for leave to amend by July 15, 2025, the Court will enter a final judgment that dismisses all claims with prejudice, except for those barred by sovereign immunity. *See Carver v. Atwood*, 18 F.4th 494, 498–99 (5th Cir. 2021) (explaining that a dismissal based on sovereign immunity must be without prejudice).

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendants' [14, 18] Motions for Judgment on the Pleadings.

---

[11] If the Court grants Johnson leave to amend, either side may move to stay this case until Johnson's state-court criminal charges are resolved. *See supra* note 9.

In summary, the Court:

- DISMISSES Johnson's federal constitutional claims against the City based on the [1] Complaint's lack of factual allegations about an official municipal policy (Section III.A.1);
- DISMISSES Johnson's state-law claims against the City based on sovereign immunity (Section III.A.2);
- DISMISSES Johnson's federal constitutional claims against the Individual Defendants based on the [1] Complaint's lack of factual allegations about Stovall and Greene's conduct, and about Scott's deliberate indifference (Section III.B.1); and
- DISMISSES Johnson's state-law claims against the Individual Defendants based on the statute of limitations as to the assault and battery claims, the [1] Complaint's lack of factual allegations about each Individual Defendant's alleged conduct as to the IIED claims, and the Individual Defendants' immunity under the MTCA as to the negligence claims (Section III.B.2).

But the Court will allow Johnson an opportunity to file a procedurally proper motion for leave to amend by July 15, 2025. If Johnson wishes to move for leave to amend, he must attach a proposed amended pleading, pleading his best case in compliance with the standards discussed throughout this Order and other applicable precedent. If Johnson does not move for leave to amend by July 15, 2025, the Court will enter a final judgment that dismisses all claims with prejudice, except for those barred by sovereign immunity.

SO ORDERED, this 1st day of July, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE